UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

PROTOSTORM, INC.,

                               Plaintiff,                      Docket No. 18 CV 2107

              -against-                       **COMPLAINT AND**
                                               **DEMAND FOR A**

MOUND COTTON WOLLAN & GREENGLASS LLP,   **TRIAL BY JURY**
ROBERT S. GOODMAN, ARTHUR M. HANDLER,
ARTHUR M. HANDLER LAW OFFICES LLC,
FOLEY & LARDNER LLP, JONATHAN E. MOSKIN,
MOUND COTTON WOLLAN & GREENGLASS,
EMILIE L. BAKAL-CAPLAN, KEVIN F. BUCKLEY,
JEFFREY C. CRAWFORD, JAMES M. DENNIS,
WAYNE R. GLAUBINGER, MICHAEL H. GOLDSTEIN,
LLOYD A. GURA, HILARY M. HENKIND,
BRUCE R. KALINER, AMY J. KALLAL, MARK S. KATZ,
MICHAEL R. KOBLENZ, KENNETH M. LABBATE,
ELLEN G. MARGOLIS, RAYMOND S. MASTRANGELO,
JOHN C. MEZZACAPPA, FRANCIS A. MONTBACH,
DAVID A. NELSON, MITCHELL D. OTTO,
JOHN F. PARKER, SANJIT S. SHAH,
PHILIP C. SILVERBERG, COSTANTINO P. SURIANO,
BARRY R. TEMKIN, JAMES VEACH, ERIC J. VOIGT,
MARK J. WEBER, JEFFREY S. WEINSTEIN, and
ROBERT E. WILDER,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

       Plaintiff Protostorm, Inc., by its attorneys Schwartz, Ponterio & Levenson, PLLC, hereby

alleges for its Complaint against defendants Mound Cotton Wollan & Greenglass LLP, Robert S.

Goodman, Arthur M. Handler, Arthur M. Handler Law Offices LLC, Foley & Lardner LLP,

Jonathan E. Moskin, Mound Cotton Wollan & Greenglass, Emilie L. Bakal-Caplan, Kevin F.

Buckley, Jeffrey C. Crawford, James M. Dennis, Wayne R. Glaubinger, Michael H. Goldstein,

Lloyd A. Gura, Hilary M. Henkind, Bruce R. Kaliner, Amy J. Kallal, Mark S. Katz, Michael R.

1

Koblenz, Kenneth M. Labbate, Ellen G. Margolis, Raymond S. Mastrangelo, John C. Mezzacappa, Francis A. Montbach, David A. Nelson, Mitchell D. Otto, John F. Parker, Sanjit S. Shah, Philip C. Silverberg, Constantino P. Suriano, Barry R. Temkin, James Veach, Eric J. Voigt, Mark J. Weber, Jeffrey S. Weinstein, and Robert E. Wilder as follows:

### Preliminary Statement

1.      This is a diversity action to recover for the legal malpractice of the defendants in their mishandling of an underlying legal malpractice action entitled *Protostorm, LLC and Peter Faulisi v. Antonelli, Terry, Stout & Kraus, LLP, Dale Hogue and Frederick D. Bailey* that was pending in the United States District Court, Eastern District of New York under Docket No. 08 CV 931 (the "ATSK Malpractice Lawsuit").

### Jurisdiction and Venue

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that diversity of citizenship exists between the parties hereto and the amounts in controversy exceed $75,000 exclusive of interest and costs.

3.      Venue of this action in this district is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

### Demand for Jury Trial

4.      Protostorm respectfully requests a trial by jury on all claims in this Complaint.

**The Parties**

5.     Plaintiff Protostorm, Inc. ("Protostorm")[1] is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business in the State of Delaware. Protostorm is a citizen of the State of Delaware.

6.     Upon information and belief, Defendant Mound Cotton Wollan & Greenglass ("MCWG") was a New York general partnership organized under the laws of the State of New York with its principal place of business in the State of New York prior to February 18, 2015.

7.     Upon information and belief, Defendant Mound Cotton Wollan & Greenglass LLP ("MCWG LLP") is law firm organized as a limited liability partnership under the laws of the State of New York with its principal place of business in the State of New York .

8.     Upon information and belief MCWG converted to a limited liability partnership on or about February 18, 2015 and MCWG LLP assumed the assets and liabilities of MCWG when the limited liability partnership was formed on or about February 18, 2015.

9.     Upon information and belief, none of the partners of MCWG are citizens of the State of Delaware and at least one of the partners is a citizen of the State of New York.

10.     Upon information and belief, none of the partners or limited partners of MCWG LLP are citizens of the State of Delaware and at least one of the partners or limited partners is a citizen of the State of New York.

11.     Upon information and belief, defendant Robert S. Goodman ("Goodman") is a citizen of the State of New York.

---

[1]  Protostorm, Inc. was formerly known as Protostorm, LLC before its conversion to a corporation under the laws of the State of Delaware.

12.     At all times relevant to this lawsuit, Goodman was an attorney admitted to practice law in the State of New York.

13.     At all times relevant to this lawsuit, Goodman was employed as an attorney by MCWG and MCWG LLP.

14.     At all times relevant to this lawsuit, Goodman was a partner at MCWG and MCWG LLP and continues to be a partner at MCWG LLP.

15.     Upon information and belief, defendants Emilie L. Bakal-Caplan, Kevin F. Buckley, James M. Dennis, Wayne R. Glaubinger, Michael H. Goldstein, Lloyd A. Gura, Hilary M. Henkind, Bruce R. Kaliner, Amy J. Kallal, Mark S. Katz, Michael R. Koblenz, Kenneth M. Labbate, Ellen G. Margolis, Raymond S. Mastrangelo, John C. Mezzacappa, Francis A. Montbach, David A. Nelson, Mitchell D. Otto, John F. Parker, Sanjit S. Shah, Barry R. Temkin, Mark J. Weber, Robert E. Wilder are citizens of the State of New York.

16.     Upon information and belief, defendants Jeffrey C. Crawford, Philip C. Silverberg, Costantino P. Suriano, James Veach, Jeffrey S. Weinstein are citizens of the State of New Jersey.

17.     Upon information and belief, defendant Eric J. Voigt is a citizen of the State of Connecticut.

18.     At all times relevant to this lawsuit, defendants Emilie L. Bakal-Caplan, Kevin F. Buckley, Jeffrey C. Crawford, James M. Dennis, Wayne R. Glaubinger, Michael H. Goldstein, Lloyd A. Gura, Hilary M. Henkind, Bruce R. Kaliner, Amy J. Kallal, Mark S. Katz, Michael R. Koblenz, Kenneth M. Labbate, Ellen G. Margolis, Raymond S. Mastrangelo, John C. Mezzacappa, Francis A. Montbach, David A. Nelson, Mitchell D. Otto, John F. Parker, Sanjit S.

Shah, Philip C. Silverberg, Costantino P. Suriano, Barry R. Temkin, James Veach, Eric J. Voigt, Mark J. Weber, Jeffrey S. Weinstein, and Robert E. Wilder were attorneys admitted to practice law in the State of New York.

19.     Upon information and belief, defendants Emilie L. Bakal-Caplan, Kevin F. Buckley, Jeffrey C. Crawford, James M. Dennis, Wayne R. Glaubinger, Michael H. Goldstein, Lloyd A. Gura, Hilary M. Henkind, Bruce R. Kaliner, Amy J. Kallal, Mark S. Katz, Michael R. Koblenz, Kenneth M. Labbate, Ellen G. Margolis, Raymond S. Mastrangelo, John C. Mezzacappa, Francis A. Montbach, David A. Nelson, Mitchell D. Otto, John F. Parker, Sanjit S. Shah, Philip C. Silverberg, Costantino P. Suriano, Barry R. Temkin, James Veach, Eric J. Voigt, Mark J. Weber, Jeffrey S. Weinstein, and Robert E. Wilder were partners at MCWG in or about 2014 and worked at MCWG's offices located in New York.

20.     Defendant Arthur M. Handler Law Offices LLC ("Handler LLC") is a law firm organized as limited liability company under the laws of the State of New York with its principal place of business in the State of New York.

21.     Upon information and belief, defendant Arthur M. Handler ("Handler") is the sole member of Handler LLC.

22.     Upon information and belief, Handler is a citizen of the State of New York.

23.     For purposes of diversity jurisdiction, Handler LLC is a citizen of the State of New York.

24.     At all times relevant to this lawsuit, Handler was an attorney admitted to practice law in the State of New York.

25.     Upon information and belief, Handler was employed as an attorney by MCWG from 2008 to 2012.

26.     Upon information and belief, Handler was a partner at MCWG from 2008 to 2012.

27.     Upon information and belief, Handler was employed as an attorney by Handler LLC from 2013 to present.

28.     Upon information and belief, Handler was a member of Handler LLC from 2012 to present.

29.     Defendant Foley & Lardner LLP ("F&L") is law firm organized as a limited liability partnership under the laws of the State of Wisconsin with its principal place of business in Milwaukee, Wisconsin and has an office in New York County.

30.     Upon information and belief, F&L is authorized to do business in the State of New York having registered with the New York State Department of State as foreign limited liability partnership.

31.     Upon information and belief, none of the partners or limited partners of F&L are citizens of the State of Delaware and at least one of the partners or limited partners is a citizen of the State of New York.

32.     Upon information and belief, Defendant Jonathan E. Moskin ("Moskin") is a citizen of the State of New York.

33.     At all times relevant to this lawsuit, Moskin was an attorney admitted to practice law in the State of New York.

34.     At all times relevant to this lawsuit, Moskin was employed as an attorney by F&L.

6

35.     At all times relevant to this lawsuit, Moskin was a partner of F&L.

**Background of Protostorm**

36.     In or about 1997, Peter Faulisi and his then partner, Courtland Shakespeare, developed and marketed an invention encompassing, among other things, an on-line computer game and related software that included a method of targeting advertising to the content of email communications (the "Invention").

37.     In or about April 2000, Protostorm retained Antonelli, Terry, Stout & Kraus, LLP ("ATSK"), a Virginia based law firm specializing in patent work, and Dale Hogue, who was of counsel to ATSK at the time, to prepare and file patent applications to secure patent protection for the Invention and to complete the prosecution of the patent application.

38.     At that time, Carl I. Brundidge ("Brundidge") was a partner at ATSK and Frederick Bailey ("Bailey") was employed as an associate at ATSK. Brundidge and Bailey were responsible for handling Protostorm's patent application.

39.     On or about June 27, 2000, Brundidge and Bailey filed a provisional application (No. 60/214,552) with the United States Patent & Trademark Office ("PTO") regarding the Invention.

40.     In or about early 2000, Faulisi and Shakespeare assigned their rights in the Invention to Protostorm. Subsequently, Shakespeare assigned all his rights in Protostorm to Faulisi.

41.     On or about June 20, 2001, Hogue provided Brundidge and Bailey with a draft of the non-provisional application so as to make any changes and prepare a Patent Cooperation

7

Treaty ("PCT") application for filing with the PTO on behalf of Protostorm prior to the PCT

filing deadline of June 27, 2001.

42.     Protostorm instructed ATSK to file the PCT application before the June 27, 2001

deadline and to include the United States as one of the countries designated on the application.

43.     Brundidge and Bailey prepared the PCT application request and transmittal forms

and, on or about June 25, 2001, filed an international application for the Invention (Application

No. PCT/US01/20173) pursuant to the PCT, with the PTO as the receiving office for the

application.

44.     Although ATSK attorneys Brundidge and Bailey checked the boxes of over 100

PCT member countries in which Protostorm might later wish to obtain patent protection for the

Invention, they failed to check the appropriate box designating the United States.

45.     The failure to designate the United States in the PCT Application was contrary to

the instructions from Protostorm to secure patent protection for the Invention in the United

States.

46.     As per the Precautionary Designation Statement on the PCT, the deadline for

confirming national designations was September 27, 2001 (15 months from the date of filing of

the provisional application). The ATSK attorneys could have corrected their failure to designate

the United States in the PCT at any time before September 27, 2001. ATSK, Brundidge and

Bailey, however, concealed their failure to designate the United States in the PCT application

from Protostorm and failed to correct the error by the September 27, 2001 deadline.

47.     On or about August 8, 2001, the PTO sent ATSK an "Invitation to Correct

Defects in the International Application" (hereinafter the "Invitation"). The Invitation specified

that a Power of Attorney ("POA") was required to be filed and that the drawings accompanying the PCT needed to be numbered. The Invitation warned that the failure to correct these defects would result in the PCT being considered withdrawn.

48.     On or about August 20, 2001, Bailey submitted corrected drawings to the PTO and requested and obtained an extension of the deadline to file a POA until September 23, 2001.

49.     On or about August 21, 2001, ATSK advised Protostorm that a POA needed to be filed with the PTO and that an extension of time to file the POA was obtained until September 23, 2001.

50.     Although Protostorm provided Brundidge and Bailey with the POA in August 2001, Brundidge and Bailey failed to file the POA or seek a further extension of time to file a POA after the September 23, 2001 deadline. Brundidge and Bailey failed to make any further filings with the PTO to preserve Protostorm's right or ability to obtain patent protection in the United States.

51.     In or about February 2006, Protostorm discovered a third party promoting a product that it believed infringed on the Invention and wanted to enforce its rights to the Invention by seeking damages from, or negotiating a license with, the third party. Protostorm learned, however, that Brundidge and Bailey had failed to include the United States in the PCT application, had not filed the POA, and had failed to correct these errors before the deadline to do so. These failures rendered Protostorm's patent unenforceable in the United States and left Protostorm without recourse against the third-party.

## Retainer of the Defendants

52.     In or about February 2008, Protostorm retained defendants Goodman and Handler

while they were partners at the law firm of Handler & Goodman LLP to represent Protostorm in a

legal malpractice action against ATSK and the attorneys handling the patent application, among

others.

53.     In or about February 2008, Protostorm retained the defendant Moskin, while he

was a partner at the law firm of White & Case LLP, to represent Protostorm in a legal

malpractice action against ATSK and the attorneys handling the patent application, among

others.

54.     On or about March 4, 2008, defendants Goodman, Handler and Moskin filed the

ATSK Malpractice Lawsuit on behalf of Protostorm.

55.     In or about January 2009, defendants Goodman and Handler became partners at

MCWG when Handler & Goodman LLP merged with MCWG.

56.     In or about January 2009, Protostorm retained MCWG to represent Protostorm in

the ATSK Malpractice Lawsuit.

57.     Goodman and Handler continued to handle the ATSK Malpractice Lawsuit while

at MCWG.

58.     In or about August 2009, defendant Moskin left White & Case LLP and became a

partner at F&L.

59.     On or about August 13, 2009, Protostorm retained F&L to represent Protostorm in

the ATSK Malpractice Lawsuit.

60.     Moskin continued to handle the ATSK Malpractice Lawsuit while at F&L.

61.     On or about August 24, 2009, the defendant attorneys amended the complaint in the ATSK Malpractice Lawsuit to add as defendants Brundidge and another ATSK partner, Alan Schiavelli ("Schiavelli").

62.     In or about 2012, Handler ceased being a partner at MCWG and started defendant Handler LLC.

63.     In or about 2012, Protostorm retained defendant Handler LLC to represent Protostorm in the ATSK Malpractice Lawsuit.

64.     Defendant Handler continued to handle the ATSK Malpractice Lawsuit while at Handler LLC.

65.     After MCWG became MCWG LLP on or about February 18, 2015, MCWG LLP continued to represent Protostorm in the ATSK Malpractice Lawsuit.

## Collectability in the ATSK Malpractice Lawsuit

66.     During discovery, the defendants in the ATSK Malpractice Lawsuit revealed that they maintained a legal malpractice insurance policy and that the coverage limits of that insurance were $5 million, inclusive of defense costs.

67.     The defendant attorneys knew, or reasonably should have known, that the limits of the ATSK's insurance policy were being significantly depleted during the course of the ATSK Malpractice Lawsuit by defense costs, thereby decreasing the amount available to satisfy a judgment in favor of Protostorm.

68.     During the ATSK Malpractice Lawsuit, the defendant attorneys learned, or reasonably should have known, that ATSK's ability to satisfy any judgment against it was declining as partners were leaving the firm and ATSK's business was decreasing.

69.     During discovery in the ATSK Malpractice Lawsuit, the defendant attorneys also learned, or reasonably should have known, that the partners of ATSK, including Brundidge, were shareholders in NTP Inc. ("NTP"), a patent holding company.

70.     In or about 2006, NTP obtained a settlement of over $600 million in a patent infringement lawsuit against Research In Motion Ltd. (hereinafter the "2006 RIM Settlement")

71.     In or about 2012, NTP reached another substantial settlement agreement with 13 different companies resolving patent infringement lawsuits against those companies (hereinafter the "2012 NTP Settlement"). The companies settling with NTP included Apple, Inc. Google Inc., Microsoft Corp., AT&T Mobility LLC, Verizon Wireless, Sprint Nextel Corp., T-Mobile International AG, HTC Corp., Motorola Mobility Holdings, Inc., Palm Inc., LG Electronics MobileComm USA Inc., Samsung Electronics Co Ltd., and Yahoo Inc.

72.     Upon information and belief, NTP distributed the funds it received from the 2006 RIM Settlement and the 2012 NTP Settlement to its shareholders, including Brundidge. All of this information about NTP was publicly available during the time that the defendant attorneys represented Protostorm in the ATSK Malpractice Lawsuit.

73.     The defendant attorneys knew, or reasonably should have known, that ATSK partners, including Brundidge, had substantial personal assets from which they would be able to satisfy a judgment entered against him personally in the ATSK Malpractice Lawsuit.

74.     Beginning in June 2009, Protostorm discussed with the defendant attorneys the need to be able to enforce any judgment against the individual defendants, including Brundidge, in the ATSK Malpractice Lawsuit given the limited and ever-decreasing insurance coverage available, and the amount of damages being sought.

12

75.     Shortly after this discussion, the defendant attorneys filed an amended complaint in the ATSK Malpractice Lawsuit adding Schiavelli and Brundidge as individual defendants.

76.     In or about 2011, Protostorm continued to discuss with the defendant attorneys their concern of being able to enforce any judgment against the individual defendants in the ATSK Malpractice Lawsuit if ATSK went out of business as appeared likely at the time.

77.     The defendant attorneys advised Protostorm on numerous occasions that they could enforce a judgment entered against the individual defendants in the ATSK Malpractice Lawsuit, including Brundidge, based on the law of joint and several liability.

### Trial of the ATSK Malpractice Lawsuit

78.     The ATSK Malpractice Lawsuit went to trial by jury from July 28, 2014 through August 15, 2014.

79.     The defendants jointly represented Protostorm during the trial of the ATSK Malpractice Lawsuit.

80.     Prior to trial, the defendants failed to submit adequate jury instructions on the issue of how liability should be apportioned among the individual ATSK attorneys, including Brundidge. The defendant attorneys also failed to request a proper verdict sheet concerning the apportioning of joint and several liability among ATSK and the individual ATSK attorneys, including Brundidge.

81.     The defendant attorneys never requested or submitted jury instructions that would have made it clear to the jury that: (a) ATSK acted through its partners and attorney employees; and (b) if an ATSK attorney was negligent then that attorney should have been held jointly and severally liable along with ATSK. Instead the defendant attorneys requested instructions that

allowed any fault assigned by the jury to an individual ATSK attorney to be shifted solely to ATSK.

82.     During the trial, the defendant attorneys requested that the court instruct the jury that it "must attribute the acts of the individual attorneys to [ATSK]" and consented to the Court, post-verdict, reallocating any percentage of fault assigned by the jury to the individual defendants in the ATSK Malpractice Lawsuit back to ATSK.

83.     On or about August 15, 2014, the jury returned a verdict in the ATSK Malpractice Lawsuit in favor of Protostorm in the amount of $6,975,000, apportioning 75% of fault to ATSK, 15% to Brundidge, 6% to Bailey and 4% to Protostorm. The jury also awarded Protostorm punitive damages against ATSK and Brundidge in the amount of $900,000 and $100,000, respectively.

84.     Immediately after the verdict, the defendant attorneys requested that the Court attribute the 15% of fault the jury allocated to Brundidge and the 6% of fault the jury allocated to Bailey to ATSK.

85.     The defendant attorneys subsequently submitted post-trial briefings to the Court wherein they continued to argue that the fault assigned by the jury against Brundidge and Bailey were attributable to ATSK but not that ATSK, Brundidge and Bailey were jointly and severally liable to Protostorm for all the compensatory damages awarded by the jury and pre-judgment interest.

86.     On or about October 8, 2014, the Court issued an order holding that only ATSK was liable to Protostorm for the entirety of the $6,975,000 compensatory damages verdict.

14

87.     On or about October 9, 2014, a judgment was entered in favor of Protostorm and against ATSK in the amount of $6,975,000 in compensatory damages, $900,000 in punitive damages and against Brundidge in the amount of $100,000 in punitive damages (hereinafter referred to as the "October 2014 Judgment").

88.     On or about October 13, 2014, the defendant attorneys made a motion to the Court to request that the October 2014 Judgment be corrected to provide that Protostorm could recover compensatory damages against Brundidge and Bailey jointly and severally with ATSK "in the amounts reflective of the percentages of fault found by the jury." Again, the defendant attorneys failed to argue that Brundidge and Bailey were jointly and severally liable with ATSK for the entirety of the compensatory damages awarded by the jury less the 4% of fault allocated to Protostorm plus pre-judgment interest.

89.     On or about October 24, 2014, the defendant attorneys submitted a reply to the Court in further support of their motion to correct the October 2014 Judgment so that the proposed judgment in their October 13, 2014 letter would be "clarified" to provide that Brundidge, Bailey and ATSK were jointly and severally liable to Protostorm for the $6,975,000 in compensatory damages. This was the first time the defendants correctly stated the law of joint and several liability to the court in the ATSK Malpractice Lawsuit.

90.     On or about December 11, 2014, the Court issued an order assigning all compensatory damages to ATSK only and reduced the amount of compensatory damages by the 4% of fault the jury assigned to Protostorm and provided for pre-judgment interest in the amount of $561,418.10.

15

91.     On or about December 11, 2014, a judgment was entered in favor of Protostorm and against ATSK in the amount of $6,696,000 in compensatory damages, $900,000 in punitive damages and $561,418.10 in pre-judgment interest and against Brundidge in the amount of $100,000 in punitive damages (hereinafter referred to as the "December 2014 Judgment").

92.     On or about December 16, 2014, the defendant attorneys made another motion to the Court to correct the December 2014 Judgment to reflect that pre-judgment interest should be $1,050,720.60 rather that $561,418.10.

93.     On or about February 5, 2015, the Court issued an order granting the motion and ordered that the judgment be amended so that ATSK was liable to Protostorm for $1,050,720.60 in prejudgment interest.

94.     On or about February 5, 2015, an amended judgment was entered in favor of Protostorm and against ATSK in the amount of $6,696,000 in compensatory damages, $900,000 in punitive damages and $1,050,720.60 in pre-judgment interest and against Brundidge in the amount of $100,000 in punitive damages (hereinafter the "Judgment").

95.     The defendant attorneys continually advised Protostorm not to worry about not having Brundidge and Bailey jointly and severally liable for the Judgment and that an appeal of that issue would be successful. Because of those discussions, Protostorm consented to defend the appeal by the defendants in the ATSK Malpractice Lawsuit and Protostorm's cross-appeal of the joint and several liability issue.

96.     In their argument on the cross-appeal of the Judgment, the defendant attorneys argued that the District Court erred by not holding Brundidge and Bailey jointly and severally

liable with ATSK for the compensatory damages awarded by the jury at the trial of the ATSK Malpractice Lawsuit.

97.     The Judgment in the ATSK Malpractice Lawsuit was affirmed by the Second Circuit Court of Appeals except for the contempt finding against Schiavelli, which was overturned.

98.     In its decision, the Second Circuit Court of Appeals held that the defendant attorneys waived the issue of whether Brundidge and Bailey should be jointly and severally liable with ATSK for the compensatory damages awarded by the jury at trial.

## Protostorm's Efforts to Collect the Judgment

99.     Following the appeal, Brundidge paid Protostorm $100,000 in satisfaction of the judgment against him.

100.     Protostorm then retained the firm of Weisbrod, Matteis & Copley to attempt to enforce the Judgment against ATSK.

101.     Protostorm received approximately $400,000 from ATSK in partial satisfaction of the punitive damages portion of the Judgment.

102.     Protostorm's efforts to collect the remaining Judgment against ATSK have been unsuccessful as ATSK has gone out of business, as expected, and does not have sufficient assets to satisfy the Judgment.

103.     The insurance coverage maintained by ATSK was fully exhausted in the defense of the ATSK Malpractice Lawsuit.

104.     Upon information and belief, at all times relevant to this action, Brundidge and/or Bailey had sufficient assets to fully satisfy the Judgment.

17

105.    Protostorm is unable to collect any part of the Judgment against Brundidge and/or Bailey due to the defendants' waiver of joint and several liability at the trial of the ATSK Malpractice Lawsuit.

## Cause of Action - Legal Malpractice

106.    Protostorm retained the defendants to advise and represent it in connection with the ATSK Malpractice Lawsuit.

107.    Protostorm had an attorney-client relationship with each of the defendants.

108.    Each of the defendants owed Protostorm a non-delegable duty and the limitations of New York CPLR Article 16 are inapplicable.

109.    Defendants acted as Protostorm's attorneys regarding the ATSK Malpractice Lawsuit beginning in or about February 2008, continuing through the trial, post-trial proceedings, and appeal, and on a continuous basis at least until on or about December 21, 2016.

110.     As attorneys for Protostorm, defendants owed a duty to render legal services in a competent and professional manner and to act with ordinary and reasonable skill, care, and diligence.

111.    Defendants acted negligently under the circumstances, failed to provide adequate legal services to Protostorm in accordance with generally accepted standards of the legal profession, and failed to act with ordinary and reasonable skill, care, and diligence.

112.    The negligence of defendants consisted of, among other things: failing to advise Protostorm properly; waiving joint and several liability with regard to Brundidge and Bailey in the ATSK Malpractice Lawsuit; failing to make proper motions in the ATSK Malpractice Lawsuit; failing to make proper legal arguments in the ATSK Malpractice Lawsuit; failing to

submit proper jury instructions; failing to timely object at trial to the jury instructions given by

the Court; failing to submit a proper verdict sheet; failing to timely object to the verdict sheet

given to the jury; failing to make proper legal arguments on appeal; failing to research and/or

know the law applicable to joint and several liability; failing to communicate with Protostorm

concerning the ATSK Malpractice Lawsuit and the waiver of joint and several liability as against

Brundidge and Bailey; and failing to advise Protostorm properly.

113.   Defendants' breaches of duty constitute negligence and legal malpractice and have

proximately caused substantial damage to Protostorm in an amount in excess of Seven million,

seven hundred and forty-six thousand, seven hundred and twenty dollars and sixty cents

($7,746,720.60) plus interest.

114.   Protostorm is also entitled to the return of all legal fees paid to defendants, interest

incurred on loans used to pay the defendant attorneys' legal fees and attorneys' fees paid to other

attorneys in an attempt to correct defendants' mistakes and collect the Judgment.

115.   Defendants' negligence was a proximate cause of Protostorm's damages described

herein. But for the defendants' malpractice, Protostorm would have been able to collect the full

amount of the Judgment from Brundidge and/or Bailey personally and would not have incurred

additional attorneys' fees and expenses.

## Partnership Liability

116.   Defendant Goodman was either a partner of MCWG, and/or an employee of

MCWG, from 2009 through February 18, 2015 when MCWG LLP was formed.

117.    Goodman's breaches of duty constituting negligence and legal malpractice as

described above were committed in the ordinary course of the partnership's business in his

capacity as a partner and/or an employee of MCWG up until February 18, 2015, and as a partner and/or an employee of MCWG LLP thereafter.

118. MCWG is liable for the negligent acts and legal malpractice of Goodman prior to February 18, 2015 pursuant to New York Partnership Law § 24 and/or the doctrine of *respondeat superior*.

119. Defendants Emilie L. Bakal-Caplan, Kevin F. Buckley, Jeffrey C. Crawford, James M. Dennis, Wayne R. Glaubinger, Michael H. Goldstein, Lloyd A. Gura, Hilary M. Henkind, Bruce R. Kaliner, Amy J. Kallal, Mark S. Katz, Michael R. Koblenz, Kenneth M. Labbate, Ellen G. Margolis, Raymond S. Mastrangelo, John C. Mezzacappa, Francis A. Montbach, David A. Nelson, Mitchell D. Otto, John F. Parker, Sanjit S. Shah, Philip C. Silverberg, Costantino P. Suriano, Barry R. Temkin, James Veach, Eric J. Voigt, Mark J. Weber, Jeffrey S. Weinstein, and Robert E. Wilder, are jointly and severally liable to Protostorm for the negligent acts and legal malpractice of MCWG and Goodman prior to February 18, 2015 pursuant to New York Partnership Law § 26.

120. By reason of the foregoing negligence of the defendants, Protostorm has been damaged in an amount to be determined at trial, but in no event less than $15,000,000 plus pre-judgment interest from August 15, 2014.

WHEREFORE, plaintiff Protostorm, Inc., by its attorneys Schwartz, Ponterio & Levenson, PLLC, respectfully requests that judgment be entered in its favor and against defendants Mound Cotton Wollan & Greenglass LLP, Robert S. Goodman, Arthur M. Handler, Arthur M. Handler Law Offices LLC, Foley & Lardner LLP, Jonathan E. Moskin, Mound Cotton Wollan & Greenglass, Emilie L. Bakal-Caplan, Kevin F. Buckley, Jeffrey C. Crawford, James M. Dennis, Wayne R. Glaubinger, Michael H. Goldstein, Lloyd A. Gura, Hilary M. Henkind, Bruce R. Kaliner, Amy J. Kallal, Mark S. Katz, Michael R. Koblenz, Kenneth M. Labbate, Ellen G. Margolis, Raymond S. Mastrangelo, John C. Mezzacappa, Francis A. Montbach, David A. Nelson, Mitchell D. Otto, John F. Parker, Sanjit S. Shah, Philip C. Silverberg, Costantino P. Suriano, Barry R. Temkin, James Veach, Eric J. Voigt, Mark J. Weber, Jeffrey S. Weinstein, and Robert E. Wilder, jointly and severally, awarding compensatory damages in an amount to be determined, but in any event not less than $15,000,000, plus prejudgment interest from August 15, 2014 until the date of judgment herein, and awarding plaintiff the costs and disbursements of this action, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
April 9, 2018

SCHWARTZ, PONTERIO & LEVENSON, PLLC
*Attorneys for Plaintiff*

By: *John Ponterio*

John Ponterio
134 West 29th Street – Suite 1006
New York, New York 10001
Telephone: (212) 714-1200