UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
PROTOSTORM, INC.,

                 Plaintiff,

      - against -

FOLEY & LARDNER LLP and JONATHAN E.
MOSKIN,

                 Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-2107 (PKC) (JO)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Protostorm, Inc. brings this diversity action against Defendants Foley & Lardner LLP and Jonathan E. Moskin[1] alleging claims of legal malpractice. The sole basis for federal jurisdiction alleged in the complaint is diversity of citizenship. (Complaint, Dkt. 1, ¶ 2.) The parties do not dispute that Defendants are citizens of New York. (*Id.* ¶¶ 29, 32; Defendants' Brief in Support ("Defs.' Br."), Dkt. 23-29, at 1.) Defendants, however, dispute Plaintiff's assertion that it is a citizen of Delaware. (*See, e.g*, Defs.' Br., Dkt. 23-29, at 2–3.) Pending before the Court is Defendants' motion to dismiss for lack of subject matter jurisdiction. For the reasons set forth below, the Court grants Defendants' motion and dismisses the action for lack of subject matter jurisdiction.

---

     [1] Plaintiff originally named 36 Defendants. (Complaint, Dkt. 1, at 1.) On July 15, 2019, Plaintiff voluntarily dismissed its claims pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) against all Defendants except Foley & Lardner LLP and Jonathan E. Moskin. (Notice of Voluntary Dismissal, Dkt. 36.)

1

# BACKGROUND[2]

Protostorm was created in 2000 as a Delaware limited liability company. (Declaration of Peter Faulisi ("Faulisi Decl."), Dkt. 27, ¶ 2.) Protostorm's only asset was "[t]he Invention" that "encompass[ed], among other things, an on-line computer game and related software that included a method of targeting advertising to the content of email communications." (*Id.*) Protostorm retained a Virginia law firm ("Virginia Firm"), specializing in patent work, to prepare and file patent applications for the Invention. (*Id.* ¶ 3.) However, in February 2006, Protostorm learned that the Virginia Firm had failed to "properly prosecute the patent such that Protostorm's patent was unenforceable in the United States." (*Id.* ¶ 4.) In February 2008, Protostorm retained Defendants to bring a legal malpractice action against the Virginia Firm. (*Id.* ¶ 5.) Though Protostorm obtained a judgment against the Virginia Firm (Plaintiff Exhibit ("Pl.'s Ex.") 1, Dkt. 25-1; *see also* Pl.'s Ex. 2, Dkt. 25-2, at 3), the judgment is unenforceable because the individual attorneys employed by the Virginia Firm were not held jointly and severally liable (Pl.'s Ex. 2, Dkt. 25-2, at 6 (noting that Protostorm "waived this issue [of joint and several liability] through statements made by Protostorm's counsel at trial")).[3] Plaintiff brought the instant action asserting

---

[2] On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to Plaintiff[]." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

[3] Plaintiff has been unable to fully collect on its judgment because the Virginia Firm dissolved shortly after the trial. (Complaint, Dkt. 1, ¶¶ 101–02.)

that Defendants committed legal malpractice by waiving this issue. (*See* Complaint, Dkt. 1, ¶¶ 106–15.)

Protostorm has not been involved in any active business since 2008, when it initiated its first malpractice action against the Virginia Firm. (Faulisi Decl., Dkt. 27, ¶ 5; Transcript of Alan Rummelsburg Deposition ("Rummelsburg Tr."), Dkt. 23-3, at 149:4–6 ("[T]he bottom line is that Protostorm is nothing but a shell at this point."); *see also id.* at 22:4–11 (noting that Protostorm has not been in business since 2008).) However, in 2016, Peter Faulisi[4] ("Faulisi"), the President and a shareholder of Protostorm, began developing a waffle manufacturing business by working with a friend, William Greico ("Greico"), who had previously owned a waffle production company under the name "Mrs. Huber Waffles" that operated out of Long Island. (Faulisi Decl., Dkt. 27, ¶¶ 1, 7–8; Rummelsburg Tr., Dkt. 23-3, at 71:16–18.) Faulisi entered into an oral agreement with Greico, giving Faulisi access to Greico's waffle formula in exchange for 25% of the net sales. (*Id.* ¶ 9.) Since obtaining the waffle formula, Faulisi has worked with various waffle manufacturers and test kitchens to improve the formula "to eliminate the problem of the waffles sticking to the oven plates." (*Id.* ¶ 10; *see also id.* ¶¶ 11–13.) Some of these waffle manufacturers were located in Delaware. (*Id.* ¶ 11.) In 2017, once Faulisi had successfully reformulated the waffle recipe, he began discussing the waffle business with Alan Rummelsburg[5] ("Rummelsburg"). (*Id.* ¶ 14.) Rummelsburg is the Vice President and another shareholder of Protostorm. (Declaration of Alan Rummelsburg ("Rummelsburg Decl."), Dkt. 26, ¶ 1.) Rummelsburg and Faulisi decided to operate the waffle business through Protostorm. (Faulisi Decl., Dkt. 27, ¶ 14; Rummelsburg Decl., Dkt.

---

[4] Faulisi is a citizen of New York. (Transcript of Peter Faulisi Deposition ("Faulisi Tr."), Dkt. 23-6, at 7:23–8:2.)

[5] Rummelsburg is a citizen of Connecticut. (Rummelsburg Tr., Dkt. 23-3, at 3:12–15.)

26, ¶ 4.) This would allow Faulisi, who owed Protostorm money for past loans, to repay the company as well as potentially generate income that could be used to pay the loans Protostorm had taken to pay the attorneys' fees from Protostorm's malpractice lawsuit against the Virginia Firm and to provide a return to Protostorm's other investors. (Faulisi Decl., Dkt. 27, ¶ 14.)

Rummelsburg began preparing a business plan that Protostorm could use to obtain financing from venture capitalists to support this fledging waffle business. (Rummelsburg Decl., Dkt. 26, ¶ 6.) This business plan is still in draft form because Rummelsburg has had to dedicate all of his time to another business venture he shares with Faulisi. (*Id.*; Rummelsburg Tr., Dkt. 23-3, at 75:18–22 ("[W]e cannot focus the attention right now with the [venture capitalists] to get this deal consummated because we're up to our eyeballs right now with this ViaClean deal.").) Rummelsburg also spoke with his personal accountant, Ben Maini ("Maini"), about the plans for turning Protostorm into a waffle manufacturing business. (Rummelsburg Decl., Dkt. 26, ¶¶ 7–8 (stating that Maini "advised" Rummelsburg "that a corporate entity may be a better investment vehicle for venture capitalists"). *But see* Transcript of Ben Maini Deposition, Dkt. 23-16, at ECF[6] 33:15–19.)[7] Rummelsburg and Faulisi decided to both incorporate Protostorm and keep it in Delaware because that "would be where the waffles are going to be manufactured and someone

---

[6] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[7] There is significant disagreement between the parties as to whether Maini advised Plaintiff that switching to a corporate form was a wise business decision. (*Compare* Plaintiff's Brief in Opposition ("Pl.'s Opp. Br."), Dkt. 28, at 4 ("Mr. Maini advised Mr. Rummelsburg that a corporate entity was potentially a better investment vehicle for venture capitalists . . . ."), *with* Defs.' Br., Dkt. 23-29, at 8 (noting that Maini testified that "he had ***not*** recommended that Protostorm LLC change its corporate form and was ***not*** involved in the conversion process").) The Court need not resolve this factual dispute in order to reach its decision.

4

will be needed to be on site for quality control." (Rummelsburg Decl., Dkt. 26, ¶ 10; Faulisi Decl., Dkt. 27, ¶¶ 16, 18.)

Faulisi thereafter entered into a lease agreement with Regus Management Group. (Faulisi Decl., Dkt. 27, ¶ 19.) At first, the lease was for a virtual office (*id.*; *see also* Defendant's Exhibit ("Defs.' Ex.") D, Dkt. 24-1), but on March 2, 2018, Faulisi upgraded the lease to a physical office in Wilmington, Delaware (Faulisi Decl., Dkt. 27, ¶ 19; Defs.' Ex. C, Dkt. 24). The office sits empty, as Protostorm currently does not employ anyone. (*See* Rummelsburg Tr., Dkt. 23-3, at 99:9–15.) Furthermore, though Faulisi has been to Delaware "many times since 2016" (Faulisi Decl., Dkt. 27, ¶ 21), Rummelsburg has never been to the Delaware office and no meetings between Faulisi and Rummelsburg have ever taken place there (*see* Rummelsburg Tr., Dkt. 23-3, at 95:8–11 (stating that he has never made any trips to Delaware in connection with the waffle business); 104:15–21 (stating that no meetings have or are scheduled to take place at the Delaware office)). Instead, when Rummelsburg and Faulisi do meet in person, they mostly do so at the Long Island offices of Health Savers, another company that Rummelsburg and Faulisi work with. (Rummelsburg Tr., Dkt. 23-3, at 37:24–38:16 (testifying that in the past year, he has met with Faulisi over 100 times "[m]ostly at the Health Savers offices"); *id*. at 126:13–20; *see also* Faulisi Tr., Dkt. 23-6, at 10:14–24 (noting that he is involved with Health Savers and that he meets with Rummelsburg "once in a while").)

On March 27, 2018, Faulisi retained Harvard Business Services, located in Delaware, to file the incorporation documentation for Protostorm with the Delaware Secretary of State and to act as Protostorm's registered agent in Delaware. (Faulisi Decl., Dkt. 27, ¶ 17; *see also* Defs.' Ex. L, Dkt. 23-13; Defs. Ex. M, Dkt. 23-14.) Around the same time, Faulisi opened a bank account for Protostorm, Inc. at a PNC Bank near the office in Wilmington, Delaware. (Faulisi Decl., Dkt.

27, ¶ 20; *see also* Defs. Ex. N, Dkt. 24-7.) Faulisi only deposited $500 because "there are currently no expenses to pay out of that account nor any income to deposit." (Faulisi Decl., Dkt. 27, ¶ 20.) Although Protostorm "is ready to begin manufacturing waffles" (*id.* ¶ 22), it is unable to begin active production because it has "not obtained the necessary funds to pay for the production, storage and transportation of the waffles" (*id.*). As a result, Protostorm has not entered into a written contract with American Waffle, its likely manufacturer (*id.*; Rummelsburg Tr., Dkt. 23-3, at 100:14–16) or with a warehouse (Rummelsburg Tr., Dkt. 23-3, at 100:10–13).

Protostorm initiated the instant action on April 9, 2018. (Dkt. 1.) On June 26, 2018, the Court granted Defendants leave to file a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), after the parties conducted limited pre-motion discovery on the jurisdiction issue. (*See* June 26, 2018 Order.) Defendants' motion to dismiss was fully briefed on November 30, 2018. (Dkts. 23–29.)[8]

On June 26, 2019, Plaintiff filed a letter motion requesting leave to file a motion to stay the arbitration that had been initiated by Defendants over their request for attorneys' fees for Protostorm's first malpractice lawsuit. (Dkt. 33.) In response, Defendants filed a letter motion requesting leave to file a motion to stay the instant proceedings so that the parties could proceed to arbitration on the attorneys' fees dispute. (Dkt. 34.) The Court construed the parties' letters as their respective motions and ordered further briefing while noting that it would not resolve the stay motions until it issued a decision on the pending motion to dismiss. (*See* July 10, 2019 Order.) Parties' respective stay motions were fully briefed on July 31, 2019. (Dkts. 37–39.)

---

[8] The Court deferred briefing on Defendants' 12(b)(6) motion until after the Court determined whether it had subject matter jurisdiction. (*See* July 11, 2018 Order.)

**LEGAL STANDARD**

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The standard for reviewing a 12(b)(1) motion to dismiss "is essentially identical to the 12(b)(6) standard," *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 286 (E.D.N.Y. 2013), except that "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists," *Makarova*, 201 F.3d at 113. Furthermore, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (internal quotations, alterations, and citation omitted). In adjudicating a motion to dismiss for lack of subject matter jurisdiction, the court may consider matters outside the pleadings. *Makarova*, 201 F.3d at 113.

**DISCUSSION**

"It is axiomatic that federal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000). "The basic statutory grants of federal court subject matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Section 1331 provides for federal-question jurisdiction, § 1332 for diversity of citizenship jurisdiction." *Ynoa v. Google, Inc.*, No. 14-CV-0015 (PKC) (JO), 2014 WL 1237304, at *2 (E.D.N.Y. Mar. 24, 2014) (internal quotations, brackets, and citations omitted).

Here, Plaintiff invokes diversity jurisdiction (Complaint, Dkt. 1, ¶ 2), which "'require[s] complete diversity between all plaintiffs and all defendants.'" *Taldone v. Barbash*, No. 14-CV-2147 (SJF) (AKT), 2014 WL 1800794, at *5 (E.D.N.Y. May 5, 2014) (quoting *Lincoln Property*

*Co. v. Roche*, 546 U.S. 81, 89 (2005)); *see also* 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ."). "[T]he jurisdiction of the court depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004) (internal quotation marks and citation omitted). "For purposes of establishing diversity jurisdiction, a corporation is deemed a citizen of the state where it has it[s] princip[al] place of business and of the state where it is incorporated." *Hershfeld v. JM Woodworth Risk Retention Grp., Inc.*, No. 16-CV-6369 (BMC), 2017 WL 1628886, at *3 (E.D.N.Y. May 1, 2017); *see also* 28 U.S.C. § 1332(c).

Plaintiff asserts that complete diversity exists because, at the time of filing, "Protostorm was a Delaware corporation with its principal place of business in Wilmington, Delaware." (Pl.'s Opp. Br., Dkt. 28, at 8.) Defendants disagree. They argue that Plaintiff's last-minute change in corporate form, from a limited liability company to a corporation, was an improper attempt to manufacture diversity jurisdiction[9] in violation of 28 U.S.C. § 1359. (Defs.' Br., Dkt. 23-29, at 12–17.) In the alternative, they also challenge Plaintiff's assertion that, as a corporation, its principal place of business is in Delaware. (*Id.* at 17–20.) Because the Court finds that

---

[9] The change in Protostorm's corporate form affects the diversity analysis because, as a limited liability company, the citizenship of its owners would be considered, and both Faulisi's New York citizenship and Rummelsburg's Connecticut citizenship would defeat diversity jurisdiction. *Crowhurst v. Szczucki*, No. 16-CV-182 (JGK), 2017 WL 519262, at *2 (S.D.N.Y. Feb. 8, 2017) ("A limited liability corporation has the citizenship of each of its members for the purposes of diversity jurisdiction.") (citing *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51–52 (2d Cir. 2000)).

8

Defendants' second ground provides a sufficient basis to dismiss the complaint, it does not address Defendants' first ground.[10]

## I. Lack of Diversity Jurisdiction: Plaintiff Has Not Shown that Delaware is Its Principal Place of Business

Accepting that Plaintiff is a corporation for the purpose of determining whether diversity jurisdiction exists, Plaintiff's citizenship is determined by its place of incorporation and its principal place of business.[11] *Hershfeld*, 2017 WL 1628886, at *3. A corporation's "principal

---

[10] The Court relies on the second ground because of the uncertainty in this Circuit on the applicability of 28 U.S.C. § 1359—on which Defendants' first argument depends—to the facts of this case. Although Section 1359 explicitly provides that, "'[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court[,]'" *Syrup Assocs., Inc. v. Coastal Dev. Mass., LLC*, No. 18-CV-8133 (JPO), 2019 WL 2121878, at *3 (S.D.N.Y. May 15, 2019) (quoting 28 U.S.C. § 1359), and although the Second Circuit broadly "construes [S]ection 1359 . . . to bar any agreement whose primary aim is to concoct federal diversity jurisdiction[,]" *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 862 (2d Cir. 1995) (internal quotations and citation omitted), the Circuit has not decided whether Section 1359 is applicable where a party has purportedly manufactured diversity through a change in its corporate form. *See Castillo Grand, LLC v. Sheraton Operating Corp.*, 719 F.3d 120, 125 (2d Cir. 2013) (noting that whether a party that allegedly manufactured diversity jurisdiction by altering the membership of its limited liability company had "violated Section 1359 is not entirely clear"). Despite indications in this Circuit favoring Section 1359's application to the instant case, *see, e.g.*, *Syrup Assocs., Inc.*, 2019 WL 2121878 at *3–4, the Court chooses to rely on the independently sufficient second ground urged by Defendants to dismiss this matter for lack of subject matter jurisdiction.

[11] Plaintiff asserts that it is a "passive" company. (Pl.'s Br., Dkt. 28, at 20.) The Court finds that Plaintiff has engaged in enough business transactions, including entering into a verbal agreement with Greico for his waffle manufacturing business in exchange for a share of the net sales (Faulisi Decl., Dkt. 27, ¶ 9), reformulating the waffle recipe (*id.* ¶¶ 10–13), and communicating with potential manufacturers and warehouses (Rummelsburg Tr., Dkt. 23-3, at 177:5–6; Faulisi Tr., Dkt. 23-6, at 27:17–21) to be considered an active corporation. *See AL Sols., Inc. v. Jamegy, Inc.*, 576 F. Supp. 2d 620, 624 (S.D.N.Y. 2008) ("For a corporation to be active, it must engage in business transactions that go towards the furtherance of its business purpose."); *Peters v. Timespan Commc'ns, Inc.*, No. 97-CIV-8750 (DC), 1999 WL 135231, at *5 (S.D.N.Y. Mar. 12, 1999) (holding that a corporation is active, even though it has not engaged in business transactions toward its original business purpose, when it continued to engage in business transactions towards a new purpose); *see also Bonnie & Co. Fashions v. Bankers Tr. Co.*, 18 F. Supp. 2d 297, 303 n.6 (S.D.N.Y. 1998) ("The Second Circuit has never specifically addressed the issue of what constitutes a business transaction for an inactive corporation. However, this Court

place of business" is "where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010); *see id.* at 93 (noting that a corporation's principal place of business is also known as its "nerve center"). "[I]n practice[,] [the nerve center] should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination." *Id.*; *see also id.* 96 (noting that the nerve center test "points courts in a single direction, toward the center of overall direction, control, and coordination"). "Although the nerve center test is neither as clear-cut nor as simple to determine as the Supreme Court evidently intended, nonetheless, as subsequent courts have recognized, the test focuses on where a corporation's 'high-level' decisions are made, not where day-to-day activities are managed." *St. Paul Fire & Marine Ins. Co. v. Scopia Windmill Fund, LP*, 87 F. Supp. 3d 603, 605 (S.D.N.Y. 2015); *see also 3123 SMB LLC v. Horn*, 880 F.3d 461, 466 (9th Cir. 2018) ("[N]umerous post-*Hertz* [district court] cases . . . have determined [that] the principal place of business of a holding company by looking to the location in which its officers or directors meet to make high-level management decisions.") (internal quotations and citation omitted).

Plaintiff argues that it is a citizen of Delaware both because it is incorporated there and its headquarters are located there. (Pl.'s Opp. Br., Dkt. 28, at 8.)[12] However, a corporation's

---

reads footnote five in *Pinnacle Consultants*[, 101 F.3d 900, 907 n.5 (2d Cir. 1996)] to imply that a business transaction for an inactive corporation is one that goes toward the furtherance of the corporation."). However, as discussed *infra* n.15, the Court's conclusion regarding the existence of diversity jurisdiction would not change if it treated Plaintiff as an inactive corporation.

[12] Plaintiff asserts that since "diversity jurisdiction depends upon the state of things at the time the action is commenced[,] . . . Protostorm's principal place of business must be determined as of the 13th day of its existence." (Pl.'s Opp. Br., Dkt. 28, at 20 (citing *3123 SMB LLC v. Horn*, 880 F.3d 461 (9th Cir. 2018)).) While it is true that the existence of diversity jurisdiction is determined based on the "state of things" at the time the lawsuit was initiated, that does not mean that the Court should ignore the fact that Protostorm existed before the filing of this lawsuit. In

headquarters are not automatically determinative of, or synonymous with, its nerve center. *See Hertz Corp.*, 559 U.S. at 97 (noting that if "the alleged 'nerve center' is nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat—the courts should instead take as the 'nerve center' the place of actual direction, control, and coordination, in the absence of such manipulation.").

Here, the record does not support equating Plaintiff's purported headquarters with its nerve center. Plaintiff admits that the office currently sits empty (Rummelsburg Tr., Dkt. 23-3, at 99:9–15), and that no meetings have taken place there (*id.* at 104:15–21). Furthermore, all of the "high-level" decisions relating to Plaintiff have taken place in New York. (*See id.* at 71:16–18 (noting that Greico's waffle business is located in New York); *id.* at 95:8–11 (noting that Rummelsburg has never been to Delaware for the waffle business); *id.* at 37:24–38:16 (noting that Rummelsburg and Faulisi meet at the Health Savers office in Long Island to discuss business relating to Protostorm).) Furthermore, Faulisi, a New York citizen, who has taken the lead on developing the waffle business, has engaged in at least some of this development in New York. (Faulisi Tr., Dkt. 23-6, at 18:5–11 (testifying that he has had waffles shipped to his home in New York).) The fact that Plaintiff has conducted some tests of Protostorm's waffle recipe in Delaware and plans to

---

*Horn*, the case Plaintiff relies on, the Ninth Circuit had to determine a corporation's "principal place of business as of its 25th day of existence" because the relevant corporation was a newly formed entity. *Id.* at 467. Unlike Plaintiff, there was no antecedent company that had converted to a new corporate form. Indeed, here, Plaintiff argues that "no new entity was created to commence this lawsuit." (Pl.'s Opp. Br., Dkt. 28, at 10 (stating that, pursuant to Delaware law, a "converted corporation shall be deemed the same entity as the converted entity") (citing 8 Del. C. § 265(f)).) Plaintiff cites no case law for the proposition that the Court may not consider the activities of an already-existing company before it converted into a corporation when determining that company's principal place of business. Therefore, in resolving this issue, the Court considers the actions that Protostorm undertook as a limited liability company, prior to the filing of this lawsuit, in deciding where Plaintiff's principal place of business is.

manufacture its waffles in Delaware (Rummelsburg Tr., Dkt. 23-3, at 79:5–10; Faulisi Decl., Dkt. 27, ¶¶ 19, 21–22) is insufficient to establish, by a preponderance of the evidence, that Protostorm's principal place of business was in Delaware when it initiated this action, or even now. *See Hertz Corp.*, 559 U.S. at 96 (noting that the "nerve center" test could lead to unexpected results, like finding that a nerve center was located in New York even though "the bulk of a company's business activities visible to the public take place in New Jersey); *see also ACI Worldwide Corp. v. Tracfone Wireless, Inc.*, No. 16-CV-981, 2017 WL 3228138, at *2 (D. Del. July 31, 2017) (noting that "a corporation could have all of its operations, manufacturing, sales, research and development and the majority of its senior management in a state that is not its principal place of business"); *see also Makarova*, 201 F.3d at 113("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists[.]"); *Grupo Dataflux*, 541 U.S. at 570 ("[T]he jurisdiction of the court depends upon the state of things at the time of the action brought."). Rummelsburg and Faulisi both admit that though they have plans for Protostorm to be based in Delaware in the future, that has not happened yet. Rummelsburg, for example, in response to a question asking where Protostorm's principal place of business is, testified that "[r]ight now[,] . . . [i]t's between my house [in Connecticut], and—well it's my house because we're not operating out of Delaware yet. If we were an operating business, obviously it would be Delaware, but right now, it's still my house." (Rummelsburg Tr., Dkt. 23-3, at 98:17–99:2;[13] *see*

---

[13] The Court notes that Rummelsburg submitted an errata sheet with his deposition that changed this answer. (*See* Errata Sheet to Rummelsburg Deposition, Dkt. 23-3, at ECF 224 (noting that Rummelsburg's original statement was a "misstatement" and changing the record to say that Protostorm's principal place of business is "Delaware because the waffles will be manufactured in Delaware and a presence is needed to oversee the manufacture of the waffles").) "Rule 30(e) of the Federal Rules of Civil Procedure permits a deponent to make changes to the form or substance of [his] deposition testimony." *Thompson v. Workmen's Circle Multicare Ctr.*, No. 11-CV-6885 (DAB) (HBP), 2015 WL 4591907, at *6 (S.D.N.Y. June 9, 2015) (citing, *inter alia*, *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir.1997)). "Courts in the Second Circuit

*also* Faulisi Tr., Dkt. 23-6, at 49:24–50:4 ("Because that's where the principal place of business is, in Delaware, so coming out of—working out of Delaware and *that's where we're going to be*, so I set up a bank account.") (emphasis added).) Therefore, though it is possible that Plaintiff's principal place of business might one day be located in Delaware, that was not the case when Plaintiff initiated this action. *See Grupo Dataflux*, 541 U.S. at 570 ("[T]he jurisdiction of the court depends upon the state of things at the time of the action brought.").

Rather, even though Rummelsburg testified that Protostorm's principal place of business is in Connecticut, where his home is located (Rummelsburg Tr., Dkt. 23-3, at 98:17–99:2; *id.* at 4:12–13 (Rummelsburg's address in Connecticut)), the Court finds that Protostorm's principal place of business is in New York. As discussed, all of the "high-level" decisions relating to Protostorm, both before and after its incorporation, have taken place in New York, including Faulisi's discussion with Greico about his waffle-making business and Faulisi's and Rummelsburg's discussions about developing the waffle business within Protostorm. (*See* Rummelsburg Tr., Dkt. 23-3, at 71:16–18 (noting that Greico's waffle business is located in New

---

construe Rule 30(e) broadly, permitting any changes to the deposition to be considered as part of the record, even where they contradict the original answers." *Samad Bros., Inc. v. Bokara Rug Co.*, No. 09-CV-5843 (JFK) (KNF), 2012 WL 43613, at *8 (S.D.N.Y. Jan. 9, 2012). However, "[b]oth the original testimony and the errata become part of the record, [and] at the summary judgment stage, a district court is 'on firm ground' if it does not credit an errata sheet that reflects a party's attempt to 'retrieve the situation by scratching out and recanting his original testimony . . . .'" *Barnes v. Ross*, No. 12-CV-1916 (PKC), 2014 WL 1329128, at *11 (S.D.N.Y. Apr. 3, 2014) (quoting *Podell*, 112 F.3d at 103); *see also Podell*, 112 F.3d at 103 (recognizing that "because any out-of-court statement by a party is an admission, a deponent's original answer should be admitted into evidence even when he amends his deposition testimony—with the deponent of course free to introduce the amended answer and explain the reasons for the change.") (internal quotations, alternations, and citations omitted). The Court finds that Rummelsburg's original statement is more consistent with the evidence as a whole and therefore affords it greater weight. However, the Court notes that it would reach the same conclusion regarding Plaintiff's nerve center even if it only relied on Rummelsburg's amended statement because the statement still implies that the waffle business is not yet operating in Delaware.

York); *id.* at 37:24–38:16 (noting that Rummelsburg and Faulisi meet at the Health Savers office in Long Island to discuss business relating to Protostorm).) Although Plaintiff has conducted some tests of Protostorm's waffle recipe in Delaware, no actual production or other activity relating to the waffle manufacturing business has yet occurred there. (Rummelsburg Tr., Dkt. 23-3, at 98:17–99:2 ("Right now[,] . . . [the principal place of business is] . . . my house [in Connecticut] because we're not operating out of Delaware yet."); Faulisi Tr., Dkt. 23-6, at 49:24–50:4 (explaining that he set up a bank account in Delaware because "that's where we're *going* to be") (emphasis added).) The finding that Protostorm's principal place of business is New York destroys diversity, as Defendants are both citizens of New York. (Complaint, Dkt. 1, at ¶¶ 29, 32; Defs.' Br., Dkt. 23-29, at 1.)[14]

The outcome is the same when the Court takes into consideration Plaintiff's relative lack of business activity. Protostorm argues that it "has little activity occurring at the present time given its lack of funding to develop a waffle business. Given its current state, it is more akin to a holding company that is more passive in nature and its footprint should be measured against the scope of its activities." (Pl.'s Br., Dkt. 28, at 20.) However, even judged under this standard, Plaintiff's principal place of business would still be New York. A holding company "engages in little activity, so there is little to direct, control, or coordinate. Its purpose—holding interest in other companies—is passive."[15] *Horn*, 880 F.3d at 465; *see also Hershfeld*, 2017 WL 1628886, at *3

---

[14] In addition, even if Protostorm's principal place of business was located in Connecticut (where Rummelsburg's home is located), diversity jurisdiction would still not exist, as at least one of the now-dismissed Defendants was a citizen of Connecticut (Complaint, Dkt. 1, ¶ 17). *See Grupo Dataflux*, 541 U.S. at 570 (diversity jurisdiction is determined at the time of filing).

[15] The Court notes that given Plaintiff's assertion that it is a "passive" corporation, a more appropriate analogy may be to an inactive corporation. *See Hershfeld*, 2017 WL 1628886, at *5 (noting that a company that has delegated its day-to-day operations to another company is more like "an inactive company [that] is no longer doing business except to wind down its pre-existing business" rather than a holding company); *see also Bonnie & Co. Fashions v. Bankers Tr. Co.*, 18

(noting that while a holding company does not "conduct[] daily business" but rather its "daily operations [are] conducted by another, separate company[,] [h]igh-level corporate decisions are made by the holding company"). A holding company's principal place of business is still determined by where its decisions are made because "the salient question [is] where the company's policies originate." *Hershfeld*, 2017 WL 1628886, at *4 (quoting *Utopia Studios, Ltd. v. Earth Tech, Inc.*, 607 F. Supp. 2d 443, 445 (E.D.N.Y. 2009)); *id.* (noting that the nerve center of a purported shell company was where the board of directors met) (citing *S & T Oil Equip. & Mach., Ltd. v. Juridica Invs. Ltd.*, No. 11-CV-542, 2011 WL 1565996, at *3 (S.D. Tex. Apr. 25, 2011)); *see also Horn*, 880 F.3d at 468 (holding that "a recently-formed holding company's principal place of business is the place where it has its board meetings, regardless of whether such meetings have already occurred, unless evidence shows that the corporation is directed from elsewhere"). As described *supra*, though Protostorm's manufacturing preparation activities may have mainly taken place in Delaware, the decision-making that drove or supported those activities, such as the decision to pursue a waffle-making business, to place that business inside of Protostorm, and to

---

F. Supp. 2d 297, 303 (S.D.N.Y. 1998) (noting that a business is not active when it does not attempt to negotiate or enter into any contracts, generate income, or employ paid personnel); *Cott Corp. v. Star*, No. 12-CV-1004S, 2013 WL 5701856, at *6–7 (W.D.N.Y. Oct. 18, 2013) (finding that a business was active when "[i]t paid salaries and medical and dental insurance premiums for two employees, it maintained an active bank account, it incurred large telephone bills to China where its parent corporation is located and most importantly, from October 2000 through January 2002 it borrowed over $200,000"). "[W]hen a corporation has ceased business activity, its principal place of business is determined by the place in which it last transacted business." *SEG Vanguard Gen. Corp. v. Ji*, 195 F. Supp. 2d 564, 567 (S.D.N.Y. 2002); *see also Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 141 (2d Cir. 1991). Protostorm's past principal place of business was either in New York or Connecticut. (Plaintiff's Rule 11 letter, Dkt. 23-24, at 3 (noting that Protostorm's prior principal places of business were Connecticut and New York).) Therefore, even if Plaintiff was considered an inactive business, the Court's conclusion regarding Plaintiff's citizenship would not change.

incorporate Protostorm in Delaware, were all made in New York. (Rummelsburg Tr., Dkt. 23-3, at 37:24–38:16; 104:15–21; 126:13–20; *see also* Faulisi Tr., Dkt. 23-6, at 10:14–24.)

Accordingly, Protostorm's principal place of business is New York. Complete diversity between the parties does not exist and the Court lacks subject matter jurisdiction to hear this action. Therefore, it must dismiss the case.

## II.     Motions to Stay

Parties have also filed competing motions to stay. (Dkts. 33 (Plaintiff's motion to stay arbitration), 35 (Defendants' motion to stay proceedings).) Because the Court lacks subject-matter jurisdiction, the Court cannot address these motions. *See Tornheim v. Kohn*, No. 00-CV-5084 (SJ), 2002 WL 482534, at *2 (E.D.N.Y. Mar. 26, 2002) ("The court should consider a 12(b)(1) motion before ruling on other motions to dismiss, since the dismissal of an action for lack of subject matter jurisdiction will render all other defenses and motions moot.") (citing *United States ex rel Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1155–56 (2d Cir.1993)). Therefore, these motions are denied as moot.

## CONCLUSION

For the reasons stated above, the Court finds that it does not have subject matter jurisdiction over this case. Accordingly, the Court grants Defendants' motion and dismisses this action. The parties' respective motions to stay are denied as moot. The Clerk of Court is respectfully directed to enter judgment and close this case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: August 29, 2019
       Brooklyn, New York

16